## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made this 12th day of January, 2016, by and among Pacific Green Group, Ltd. ("PGGL"), Pacific Green Technologies, Inc. ("PGT"), Amanda McVety, a shareholder of PGT ("McVety"), and Joshua L. Seifert PLLC, counsel to McVety ("McVety's Counsel") (collectively the "Parties," any of the Parties individually "Party"), with reference to the following facts:

A. PGGL is presently named as defendant in an action brought by McVety on behalf of PGT pursuant to Section 16(b) of the Exchange Act, Case Number 13-CV-8149 (VEC) (S.D.N.Y.) (the "Section 16(b) Suit");

B. PGT, represented by its independent counsel, has determined that settlement of the matter is in the best interests of PGT and its stockholders. PGT has further determined that the terms of the settlement set forth herein are fair and reasonable to PGT and its stockholders.

NOW, THEREFORE, in consideration of the representations, releases and agreements made herein, the Parties agree as follows:

1. No Admission of Liability. This Agreement shall not be construed as an admission by any Party of any wrongful acts against or liability to any other Party or person, and each Party specifically disclaims any such wrongful acts and liability.

2. Payment to PGT. Within sixty (60) calendar days after the Parties fully execute this Settlement Agreement and Release, PGGL shall cause $150,000.00 USD to be paid to PGT. Within one hundred twenty (120) calendar days after the Parties fully execute this Settlement Agreement and Release, PGGL shall cause $50,000.00 USD to be paid to PGT. Within seven (7) months after the Parties fully execute this Settlement Agreement and Release, PGGL shall cause $125,000.00 USD to be paid to PGT.

3. Manner of Payment to PGT. The payment set forth in Paragraph 2 shall be made by wire transfer to Sallah Astarita & Cox LLC IOLTA Account (wire instructions to be provided at a later time).

4. Payment to McVety's Counsel. The total payment due to McVety's Counsel is $325,000.00 USD. Within sixty-five (65) calendar days after the Parties fully execute this Settlement Agreement and Release, PGT shall cause $150,000.00 USD to be paid to McVety's Counsel. Within one hundred twenty-five (125) calendar days after the Parties fully execute this Settlement Agreement and Release, PGT shall cause $50,000.00 USD

to be paid to McVety's Counsel. Within seven (7) months and five (5) days after the Parties fully execute this Settlement Agreement and Release, PGT shall cause $125,000.00 USD to be paid to McVety's Counsel.

5. <u>Manner of Payment to McVety's Counsel</u>. The payments set forth in Paragraph 4 shall be made by wire transfer to Joshua L. Seifert, Esquire (wire instructions to be provided at a later time).

6. <u>Default by PGGL</u>. If PGGL fails to make any payment to PGT as required in Paragraph 2, then PGGL shall immediately: (1) stipulate to judgment in an amount equal to the outstanding balance owed to PGT under Paragraph 2, plus an additional $463,000.00; and (2) forgive an additional $2.0 million in debt currently owed to PGGL by PGT.

7. <u>Default by PGT</u>. If PGT fails to make any payment to McVety's Counsel as required in Paragraph 4, PGT shall immediately stipulate to judgment in an amount equal to the outstanding balance owed to McVety's Counsel under Paragraph 4, plus an additional 50% of such amount.

8. <u>Non-Conversion of Debt by PGGL</u>. Until PGGL makes all of the payments to PGT as required in Paragraph 2, PGGL shall not convert to equity any of the debt that is outstanding and owed to it by PGT.

9. <u>Releases</u>. Upon voluntary dismissal:

a. PGT and McVety, on behalf of themselves and their respective present and former officers, directors, employees, members, managers, agents, attorneys, representatives, advisors, affiliates (as defined in Rule 12b-2 under the Exchange Act), associates (as defined in Rule 12b-2 under the Exchange Act), parents, principals, subsidiaries, general or limited partners or partnerships, investment advisory clients, controlling persons, heirs, executors, administrators, predecessors, successors and assigns, the marital communities (if any) of each such person, and each of them, to the fullest extent permitted by law, release PGGL and its respective present and former officers, directors, employees, members, managers, agents, attorneys, representatives, advisors, affiliates (as defined in Rule 12b-2 under the Exchange Act), associates (as defined in Rule 12b-2 under the Exchange Act), parents, principals, subsidiaries, general or limited partners or partnerships, investment advisory clients, controlling persons, heirs, executors, administrators, predecessors, successors and assigns, the marital communities (if any) of each such person, and each of them (collectively, the "PGGL Released Persons"), from any and all claims, rights, causes of action, suits, obligations, damages and liabilities, known or unknown, in law or in equity, for disgorgement, indemnity, contribution or otherwise arising under Section 16 of the Exchange Act relating to the matching of (i) any of the transactions of PGT common stock referenced in the pleadings filed in the Section 16(b) Suit or (ii)

any transactions reported on a Form 4 filed by PGGL prior to May 20, 2014 (hereinafter "Claims").

  b. PGT and McVety represent and warrant that they have not assigned or transferred, and that they will not assign or transfer, any interest in any Claims that they may have against the PGGL Released Persons, or any of them.

  c. PGT and McVety covenant that, with the exception of any action to enforce the terms of this Agreement, they will not sue the PGGL Released Persons, or any of them, in any court or tribunal or bring any action, lawsuit or cause of action (whether by way of direct action, counterclaim, cross claim or interpleader) against them based on any of the Claims released herein or relating to the matching of any of the transactions of PGT common stock reported by PGGL on a Form 4 filed with the Securities and Exchange Commission at any time between September 10, 2013 and May 20, 2014.

  d. PGGL, to the fullest extent permitted by law, releases McVety and PGT and its respective present and former officers, directors, employees, members, managers, agents, attorneys, representatives, advisors, affiliates (as defined in Rule 12b-2 under the Exchange Act), associates (as defined in Rule 12b-2 under the Exchange Act), parents, principals, subsidiaries, general or limited partners or partnerships, investment advisory clients, controlling persons, heirs, executors, administrators, predecessors, successors and assigns, and each of them (collectively, the "PGT Released Persons"), from any and all claims, rights, causes of action, suits, obligations, damages and liabilities, known or unknown, in law or in equity, for indemnity, contribution or otherwise which may be based upon, relate to or arise out of, under or in connection with the settlement or resolution of the Claims.

  e. McVety, to the fullest extent permitted by law, releases the PGT Released Persons from any and all claims, rights, causes of action, suits, obligations, damages and liabilities, known or unknown, in law or in equity, for indemnity, contribution or otherwise which may be based upon, relate to or arise out of, under or in connection with the investigation, settlement or resolution of the Claims.

  f. McVety and her counsel covenant that they will not sue the PGT Released Persons, or any of them, in any court or tribunal or bring any action, lawsuit or cause of action (whether by way of direct action, counterclaim, cross claim or interpleader) against them based on the investigation, settlement or resolution of the Claims.

10. <u>Waiver of California Civil Code Section 1542</u>.  PGGL, PGT, McVety and their counsel intend that the releases set forth in Paragraph 9 shall be effective as a full and final accord and satisfaction of (and as a bar to) all

claims, rights, causes of action, suits, obligations, damages and liabilities of any nature, character or kind whatsoever, that were or could have been asserted with respect to the matters released, whether or not now known or suspected. PGT, McVety, PGGL and their counsel expressly waive any rights or benefits available to them under the provisions of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

PGT, McVety, PGGL and their counsel acknowledge that they understand the language and effect of Section 1542 of the California Civil Code but nevertheless elect to release the other to the full extent described in this Agreement and specifically waive any rights that they may otherwise have under Section 1542, and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, that are comparable or equivalent to California Civil Code §1542. This reference to Section 1542 of the California Code shall not be construed as an indication that the Parties intend to have California law apply to this Agreement.

11. <u>Voluntary Dismissal</u>.  McVety shall voluntarily dismiss this Section 16(b) Suit with prejudice within five (5) days of the receipt of the third and final payment referenced in Paragraph 4.

12. <u>Representations</u>.  Each signatory represents and warrants that:

   a.   he or she has full authority to fully bind himself or herself and full authority to bind any entity on whose behalf he or she purports to sign;

   b.   he or she, or the entity on whose behalf he or she purports to sign, and his, her or its attorneys are not aware of any other pending or threatened suit against the PGGL Released Persons concerning or related to the Claims;

   c.   he or she, or the entity on whose behalf he or she purports to sign, has not wholly or partially assigned, hypothecated, transferred, conveyed, or suffered a lien or execution process on any of the Released Claims, or any right to any such claim;

      d.    he or she has discussed this Agreement and its implications with independent counsel, who has explained the same; and

      e.    he or she has carefully read this Agreement and know the contents thereof, and have signed this Agreement as his, her or its free act and with the intention of being legally bound thereby.

13.    <u>Valid and Binding Obligation</u>. Each Party represents that this Agreement, when executed and delivered by such Party, constitutes a valid and binding obligation of such Party, enforceable in accordance with its terms.

14.    <u>Voluntary Execution of Agreement</u>. This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties hereto, with the full intent of releasing the claims set forth herein. Each Party acknowledges that she or it:

      a.    has read this Agreement;

      b.    has been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of her or its own choice or that she or it has voluntarily declined to seek such counsel;

      c.    understands the terms and consequences of this Agreement and of the releases it contains; and

      d.    is fully aware of the legal and binding effect of this Agreement.

15.    <u>Due Execution</u>. All Parties represent that all appropriate action on their part necessary for the due and valid authorization, execution, delivery and performance of this Agreement have been taken. Each of the individuals executing this Agreement on behalf of the Parties represents that he or she has all required authority to execute this Agreement in the capacity listed and has been duly authorized by the respective Parties.

16.    <u>Successors and Assigns</u>. This Agreement and the respective rights and obligations of the Parties will inure to the benefit of, and be binding upon, their respective successors, assigns, heirs and legal and personal representatives.

17.    <u>Entire Agreement; Amendment</u>. This Agreement represents the entire agreement and understanding among the Parties concerning the subject matter hereof, and supersedes and replaces any and all prior written or oral agreements and understandings among the Parties concerning the subject matter. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties hereto relating to the subject matter of this Agreement that are not fully expressed

herein or therein.  This Agreement may be amended only by a written document signed by the Parties.

18. Counterparts. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but both such counterparts shall together constitute one and the same document.

19. Further Assurances. Each Party, without additional consideration, agrees to execute and deliver such other documents and to take such other action reasonably necessary to effect the provisions of this Agreement.

20. Choice of Law. To the extent not inconsistent with any governing federal law, this Agreement shall in all respects be interpreted, enforced and governed under and in accordance with the laws of the State of New York, without reference to the conflict of law provisions thereof.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth above.

PACIFIC GREEN TECHNOLOGIES, INC.

By: _____
Name: NEIL CARMICHAEL
Title: CEO

PACIFIC GREEN GROUP, LTD.

By: _____
Name:
Title:

Scot Hunter
Director

AMANDA MCVETY

_____

JOSHUA L. SEIFERT PLLC

By: _____
Name: Joshua Seifert
Title: Founder

7